UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESAI DIAZ,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>ALLSTATE NORTHBROOK INDEMNITY COMPANY,<br><br>　　　　　　　　　Defendant. | Case No.: 22-cv-705-MMA (WVG)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 13] |

　　　Plaintiff Esai Diaz ("Plaintiff") brings this action against property and casualty insurer, Allstate Northbrook Indemnity Company ("Defendant"). *See* Doc. No. 1. Presently before the Court is Defendant's motion for summary judgment or, alternatively, partial summary judgment. Doc. No. 13. Plaintiff filed an opposition, Doc. No. 14, to which Defendant replied, Doc. No. 15. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1. *See* Doc. No. 16. For the reasons set forth below, the Court **GRANTS** Defendant's motion.

## I. Procedural Background

On November 17, 2021, Plaintiff initiated this action against Defendant in the Superior Court of California, County of San Diego. *See* Doc. No. 1-2. On May 17, 2022, Defendant filed a notice of removal to this Court. Doc. No. 1. Plaintiff brings two causes of action against Defendant: (1) breach of contract; and (2) breach of implied covenant of good faith and fair dealing. *See generally id.* Plaintiff seeks the following damages: general damages of pain, suffering, inconvenience, and emotional distress; punitive damages; at least $46,695.00 in attorney's fees and costs; and at least $5,794.52 in prejudgment interest. Doc. No. 1-6 at 2.[1] On May 17, 2022, Defendant removed the action to this Court. *See generally* Doc. No. 1. On June 13, 2022, Plaintiff moved to remand the action to state court. *See* Doc. No. 5. On September 2, 2022, this Court denied Plaintiff's motion to remand. Doc. No. 9. Defendant now moves for summary judgment on both of Plaintiff's causes of action or, alternatively, partial summary judgment on Plaintiff's claim for punitive damages. *See generally* Doc. No. 13.

## II. Factual Background[2]

On January 31, 2016, when he was 18 years old, Plaintiff was rear-ended in an automobile accident. Doc. No. 13-3 ("Defendant's Separate Statement" or "DSS") at No. 1; *see also* Doc. No. 14-1 ("Plaintiff's Response Statement" or "PRS") at No. 1; Doc. No. 13-9, Defendant's Ex. 5 ("Traffic Collision Report") at 2. The traffic collision report did not mention whether Plaintiff or any other person sustained any injuries in the accident. *See* Traffic Collision Report at 2–7. At the time, Plaintiff had an automobile insurance policy with Defendant. DSS at No. 2; PRS at No. 2. The policy provided underinsured motorist ("UIM") bodily injury coverage with a $1 million limit. DSS at

---

[1] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.
[2] These material facts are taken from Defendant's separate statement and Plaintiff's response thereto, as well as the parties' supporting declarations and exhibits. Disputed material facts are discussed in further detail where relevant to the Court's analysis. Facts that are immaterial for purposes of resolving the current motions are not included in this recitation.

No. 2; PRS at No. 2. The driver who rear-ended Plaintiff had $15,000 in liability coverage. DSS at No. 3; PRS at No. 3. After the accident, Plaintiff hired a lawyer and made a claim to the other driver's liability insurer. DSS at No. 4; PRS at No. 4.

Plaintiff's father contacted Defendant shortly after the accident and indicated that Plaintiff was experiencing back pain.[3] PRS at Nos. 6; 32. However, in August 2016, Plaintiff submitted medical records and bills to Defendant for payment under his medical payment ("med-pay") coverage, which indicated that Plaintiff did not seek medical treatment until five weeks after the accident. DSS at No. 7; PRS at No. 8.

In September 2016, Defendant retained Dr. John Qian, M.D., a board-certified orthopedic surgeon, to perform an Independent Medical Examination ("IME") on Plaintiff regarding his accident-related injuries and symptoms. DSS at No. 8; PRS at No. 9. Although it was scheduled for three different dates in November 2016, December 2016, and January 2017, the IME did not go forward due to a disagreement between Dr. Qian and Plaintiff's counsel about the right to record the examination. DSS at No. 9; PRS at No. 10. Therefore, the IME was rescheduled to April 28, 2017 with a different board-certified orthopedic surgeon, Dr. Luke Bremner, M.D., who allowed the examination to be recorded. DSS at No. 9; PRS at No. 10.

After examining Plaintiff, Dr. Bremner prepared an IME report on May 18, 2017. *See* Doc. Nos. 13-11 at 5; 13-12, Defendant's Ex. 8 ("Bremner Report"), at 2–9. In the report, Dr. Bremner concluded the following:

> (1) [Plaintiff's] soft-tissue injuries did not require the excessive treatment [Plaintiff] claimed to need; (2) [Plaintiff's] complaints of pain supported a "more benign level of injury;" (3) [Plaintiff's] subjective complaints were not supported by objective findings (he had "mild pain on exam with good range

---

[3] Defendant states that in March 2016, Plaintiff's father had indicated that Plaintiff "sought no medical treatment for any accident-related injuries." DSS at No. 5. Plaintiff purports to dispute this fact by stating that Plaintiff's father had contacted Defendant to let Defendant know that Plaintiff was experiencing pain from his accident injuries. PRS at No. 6. However, Plaintiff does not claim to have actually sought medical treatment. Therefore, the Court treats this fact as undisputed.

of motion and strength"); (4) [Plaintiff's] symptoms should have resolved with conservative treatment within three months of the accident; and (5) there was "no objective indication for the need for additional treatment."

DSS at No. 10; PRS at No. 11; *see generally* Bremner Report. Based on Dr. Bremner's opinions, Defendant paid Plaintiff $1,450 for three months of conservative treatment under his med-pay coverage. DSS at No. 11; PRS at No. 12.

On January 10, 2018, Plaintiff sent a letter to Defendant indicating he had settled with the other driver's insurer for the $15,000 liability limit, providing a copy of the settlement agreement signed by the parties, and demanding $150,000 in UIM benefits from Defendant and that the UIM claim be arbitrated. DSS at No. 12; PRS at No. 13. On January 19, 2018, Defendant acknowledged its receipt of Plaintiff's arbitration demand. PRS at No. 34; Doc. No. 14-3 at 18. Plaintiff attached documents to his demand letter that showed the following:

> (1) [Plaintiff] did not seek any medical treatment until five weeks after the accident; (2) [Plaintiff] had only minor soft-tissue injuries; (3) some of [Plaintiff's] claimed expenses were for Botox injections for headaches that he first mentioned to a doctor more than ten months after the accident; and (4) [Plaintiff] missed no time from work after the accident.[4]

DSS at No. 14. However, Plaintiff did not attach to his demand letter proof of actual payment from the other driver's insurance. DSS at No. 12; PRS at No. 13.

On July 26, 2018, Defendant advised Plaintiff that it was not in receipt of his UIM demand. PRS at No. 36. On October 4, 2018, Plaintiff sent Defendant a second demand letter for $150,000 in UIM benefits based on the same information he had provided with

---

[4] Plaintiff disputes only the first part of Defendant's Fact No. 14, which states that Plaintiff "did not seek any medical treatment until five weeks after the accident." *See* PRS at No. 15 (mislabeled as PRS No. 6 in Doc. No. 14-1 at 7–8). However, Plaintiff's response and evidence do not support his dispute of this fact. Instead, Plaintiff's facts indicate only that Plaintiff's father contacted Defendant multiple times shortly after the accident and inquired about "guidance on Plaintiff's injuries," i.e., whether Plaintiff *should* seek medical treatment.

his earlier demand. DSS at No. 13; PRS at No. 13; Doc. No. 14-3 at 23. On October 16, 2018, Plaintiff e-mailed Defendant a copy of the settlement check he had received from the other driver's liability insurer for $15,000. DSS at No. 15; PRS at No. 15; Doc. No. 13-6 at 2.

In May 2019, Defendant evaluated Plaintiff's claim based on the records provided with the demands. DSS at No. 16; PRS at No. 17. After giving Plaintiff full credit for his post-accident treatment and reducing his claimed medical expenses to reasonable and customary amounts, Defendant arrived at a settlement value of $13,400, which consisted of $7,800 in past medical expenses and $5,600 in general damages. DSS at No. 16; PRS at No. 17. Because this amount was less than Plaintiff's earlier $15,000 settlement with the at-fault driver, Defendant concluded that Plaintiff had been fully compensated and, therefore, was not entitled to UIM benefits. DSS at No. 16; PRS at No. 17.

Plaintiff disagreed with Defendant's evaluation and insisted that his claim was worth $150,000. DSS at No. 17; PRS at No. 17.[5] As a result, Defendant retained a second board-certified orthopedic surgeon, Dr. Larry D. Dodge, M.D., to examine Plaintiff, review his medical records, and provide a second opinion regarding his injuries and treatment. DSS at No. 17; PRS at No. 17; Doc. No. 13-19 at 13.

On September 24, 2019, Defendant deposed Plaintiff. PRS at No. 41. Plaintiff testified that he felt sore in the days following the collision but felt like his symptoms would resolve. *Id.*; Doc. No. 14-3 at 30.

On November 8, 2019, Plaintiff sent another $150,000 demand. DSS at No. 18; PRS at No. 18. After receiving this demand, Defendant stated that it could neither accept nor reject the demand, but that it would be in a position to respond within 45 days of receipt of Dr. Dodge's IME report that was scheduled for February 2020. DSS at No. 19;

---

[5] Plaintiff does not dispute this fact. However, as noted above, Plaintiff's Response Statement is misnumbered and in this instance includes two statements identified as No. 17. Thus, this particular undisputed fact can be found at Doc. No. 14-1 at 9.

PRS at No. 20.  On February 13, 2020, Dr. Dodge examined Plaintiff and prepared an IME report.  Doc. No. 13-19 at 2–13.  In his report, Dr. Dodge stated that (1) it was "somewhat debatable" whether Plaintiff's symptoms were related to the accident; (2) up to three physician visits and six physical therapy/chiropractic visits would have been reasonable to treat Plaintiff's soft-tissue symptoms; and (3) Plaintiff was not a candidate for any pain injections.  DSS at No. 20; PRS at No. 20.

Between February 2020 and December 2020, the parties conducted discovery, discussed the selection of an arbitrator, and prepared for arbitration.  DSS at No. 21; PRS at No. 22.  On December 7, 2020, Plaintiff demanded $60,000.  DSS at No. 22; PRS at No. 23.  On March, 1, 2021, Plaintiff demanded $35,000.  DSS at No. 23; PRS at No. 24.

Defendant declined to accept Plaintiff's demands because it determined that Plaintiff had already been fully compensated.  DSS at No. 24; PRS at No. 25.  Because the parties could not agree on the value of Plaintiff's claim, they scheduled an arbitration hearing to resolve their dispute.  DSS at No. 25; PRS at No. 26.

On April 16, 2021, Plaintiff claimed $180,000 in damages, consisting of $45,000 in claimed medical expenses and $135,000 in general damages.  DSS at No. 26; PRS at No. 27.

On April 23, 2021, the parties attended an arbitration hearing.  DSS at No. 27; PRS at No. 28.  After hearing the evidence, the arbitrator found that Plaintiff's UIM claim was worth $40,000.  DSS at No. 27; PRS at No. 28.  After reducing that amount by the prior $15,000 settlement and $1,450 in med-pay benefits, the arbitrator awarded Plaintiff $23,500.  DSS at No. 27; PRS at No. 28.  On April 30, 2021, Defendant promptly paid the arbitrator's award.  DSS at No. 29; PRS at No. 29.

### III. LEGAL STANDARD

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323–24 (1986).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

1 P. 56(a). "In considering a motion for summary judgment, the court may not weigh the
2 evidence or make credibility determinations, and is required to draw all inferences in a
3 light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735
4 (9th Cir. 1997).

5       The party moving for summary judgment bears the initial burden of identifying
6 those portions of the pleadings, discovery, and affidavits that demonstrate the absence of
7 a genuine issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine"
8 only if there is sufficient evidence for a reasonable fact finder to find for the non-moving
9 party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A fact is
10 "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for
11 summary judgment does not have the ultimate burden of persuasion at trial, that party
12 must produce evidence which either negates an essential element of the non-moving
13 party's claims or that party must show that the non-moving party does not have enough
14 evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan*
15 *Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

16       Once the moving party meets his or her initial burden, the non-moving party must
17 go beyond the pleadings and, by its own evidence, set forth specific facts showing that
18 there is a genuine issue for trial. *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1102. In
19 order to make this showing, the non-moving party must "identify with reasonable
20 particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d
21 1275, 1279 (9th Cir. 1996). In addition, the party seeking to establish a genuine issue of
22 material fact must take care to adequately point a court to the evidence precluding
23 summary judgment because a court is "not required to comb the record to find some
24 reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified*
25 *School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (citation omitted). If the non-moving
26 party fails to point to evidence precluding summary judgment, the moving party is
27 entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.
28

# IV. DISCUSSION

Defendant seeks summary judgment on Plaintiff's claims for breach of contract and breach of implied covenant of good faith and fair dealing. Doc. No. 13 at 2. Defendant advances several arguments: (1) Plaintiff's breach of contract claim fails because Defendant paid the arbitration award in full; (2) there were genuine disputes as to the value of Plaintiff's claim; and (3) Defendant did not unreasonably delay its investigation of Plaintiff's claim. Doc. No. 13-1 at 16–26. Alternatively, Defendant seeks partial summary judgment on Plaintiff's request for punitive damages, asserting he failed to provide any evidence of fraud, oppression, or malice. *Id.* at 26–27.

## A. Breach of Contract

Defendant argues that Plaintiff's breach of contract claim fails as a matter of law because Defendant paid the arbitration award in full. *Id.* at 16. Plaintiff does not address this argument in his opposition.

Here, there exists no triable issue of fact. "[U]nder California law, there can be no breach of contract where an insurer pays an arbitration award or the applicable policy limit." *Paulson v. State Farm Mut. Auto. Ins. Co.*, 867 F. Supp. 911, 917–18 (C.D. Cal. 1994) (holding that an insured could not state a breach of contract claim where the insurer initially denied the uninsured motorist claim, but later paid the full amount of the arbitration award). And since Defendant paid the full amount of the arbitration award, DSS at No. 29, which Plaintiff does not dispute, PRS at No. 30, Defendant cannot be liable for breach of contract.

Accordingly, the Court **GRANTS** Defendant's motion as to Plaintiff's breach of contract cause of action.

## B. Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff alleges Defendant breached the implied covenant of good faith and fair dealing when handling his claim. Doc. No. 14 at 11–18. Specifically, he contends Defendant unreasonably delayed its investigation of his claim and acted in bad faith by using biased doctors to evaluate Plaintiff. *Id.* at 14. Defendant contends it is entitled to

summary judgment on Plaintiff's bad faith claim because there were genuine disputes about the value of his UIM claim, and that its handling of his claim was not unreasonable. Doc. No. 13-1 at 19–25.

In order to establish a breach of the implied covenant of good faith and fair dealing by an insurer under California law, a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause. *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001). In first-party insurance cases, as here, the "ultimate test of liability . . . is whether the refusal to pay policy benefits was *unreasonable.*" *Austero v. Nat'l Cas. Co.*, 84 Cal. App. 3d 1, 31 (1978), *overruled on other grounds by Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d 809 (1979). An insurer that unreasonably delays or fails to pay benefits due under the policy may be held liable in tort. *Maslo v. Ameriprise Auto-Home Ins.*, 227 Cal. App. 4th 626, 633 (2014) (citing *Rappaport-Scott v. Interinsurance Exch. of the Auto. Club*, 146 Cal. App. 4th 831, 837 (2007)). While the reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact, it becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence. *Chateau Chamberay Homeowners Assn v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 346 (2001) (citing *Paulfrey v. Blue Chip Stamps*, 150 Cal. App. 3d 187, 198 (1983)).

1. Genuine Disputes

Under California law, "an insurer does not act in bad faith so long as a 'genuine dispute' exists over an insured's coverage." *Myers v. Allstate Indem. Co.*, 109 F. Supp. 1331, 1336 (C.D. Cal. 2015) (quoting *Maynard v. State Farm Mut. Auto. Ins. Co.*, 499 F. Supp. 2d 1154, 1160 (C.D. Cal. 2007)) (internal quotation marks omitted). A genuine dispute exists where "the insurer's position is maintained in good faith and on reasonable grounds." *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 723 (2007). The genuine dispute rule "allows a district court to grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable—for

example, where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California law." *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161 (9th Cir. 2002); *see also Lunsford v. Am. Guar. & Liab. Ins. Co.*, 18 F.3d 653, 656 (9th Cir. 1994) ("[A] court can conclude as a matter of law that an insurer's denial of a claim is not unreasonable, so long as there existed a genuine issue as to the insurer's liability."). An insurer may demonstrate the existence of a genuine dispute by showing that "it relied on opinions from experts while evaluating the insured's claim." *Maynard*, 499 F. Supp. 2d at 1160 (citing *Fraley v. Allstate Ins. Co.*, 81 Cal. App. 4th 1282, 1292 (2000) ("The 'genuine dispute' doctrine may be applied where the insurer denies a claim based on the opinions of experts.")).

Defendant has established that there was a genuine dispute over the value of Plaintiff's UIM claim. For instance, Plaintiff did not seek treatment for any of his alleged injuries until five weeks after the accident. DSS at No. 7; PRS at No. 8. This type of delay in seeking medical care supports a finding that the claim or its value was in genuine dispute. *See Kerrigan v. Allstate Ins. Co.*, 543 F. Supp. 3d 843, 854 (C.D. Cal. 2021) (finding genuine dispute where plaintiff waited thirty-seven days after accident before seeking medical care).

In addition, the Court agrees with Defendant that a genuine dispute existed based on the disparity between Plaintiff's claimed damages and the arbitrator's award. Here, Plaintiff made several different settlement demands ranging from $35,000 up to his pre-arbitration demand of $180,000. *See* DSS at Nos. 12, 17–18, 22–23, 26; PRS at Nos. 13, 17–18, 23–24, 27. Regardless of which settlement demand the Court looks to, there is a substantial disparity between Plaintiff's demands and arbitrator's award, which was only $23,500.[6] DSS at No. 27; PRS at No. 28. As other Courts have found, "the measure of a

---

[6] As noted above, the arbitrator found Plaintiff's claim worth $40,000, but offset that amount by the $15,000 he received in settlement from the at-fault driver and the $1,450 he received in med-pay benefits. DSS at No. 27; PRS at No. 28.

genuine dispute is the difference between what Plaintiff claimed as damages and what Plaintiff was *awarded* during arbitration." *Maynard*, 499 F. Supp. 2d at 1160 (emphasis added). Thus, this discrepancy demonstrates that, as a matter of law, Defendant had a genuine dispute with Plaintiff, and therefore, Defendant acted reasonably in evaluating Plaintiff's claim.

Furthermore, Defendant's medical expert Dr. Bremner opined that Plaintiff's injuries and the treatment he claimed to need far exceeded what was necessary. DSS at No. 10; PRS at No. 11; *see generally* Bremner Report. Because the extent and nature of Plaintiff's injuries and treatment were in dispute, Defendant's reliance on its own expert's opinion was reasonable. *Ives v. Allstate Ins. Co.*, 520 F. Supp. 3d 1248, 1256 (C.D. Cal. 2021) (finding insurer's reliance on its own expert reasonable where the extent and nature of plaintiff's injuries were disputed). In opposition, Plaintiff asserts that the medical experts retained by Defendant were biased. It is true that reliance on an independent expert's analysis can show there was a genuine dispute regarding the amount owed but will not automatically insulate an insurer from a bad faith claim based on a biased investigation. *Keshish v. Allstate Ins. Co.*, 959 F. Supp. 1226, 1234 (C.D. Cal. 2013). But Plaintiff fails to substantiate his claims of bias. Indeed, Plaintiff offers no evidence that Dr. Bremner or Dr. Dodge performed a biased or deficient investigation on him other than to imply that they did do because Defendant previously hired these experts in the past. This is insufficient on its own to prove bias. The "mere fact that the[ ] doctors have been hired by insurers rather than insureds does not support bias." *Cardiner v. Provident Life—Accident Ins. Co.*, F. Supp. 2d 1088, 1101 (C.D. Cal. 2001).

Finally, to the extent that Plaintiff argues Defendant acted in bad faith by not offering Plaintiff and his father "help or reasonable assistance" in regard to Plaintiff receiving treatment for his back pain, Doc. No. 14 at 15, the Court is not convinced. Plaintiff does not provide the Court with any legal authority or point to any policy provision that states his auto-insurer was required to provide him with medical advice. Moreover, as highlighted by Defendant, once Plaintiff's father expressed interest in

receiving medical care for his son, Defendant provided Plaintiff's father with information on how to retain an in-network medical provider if they so desired. Doc. No. 14-3 at 3; Doc. No. 15 at 7–8.

In sum, Defendant has established that genuine disputes existed over the value of Plaintiff's UIM claim, meaning its delay in payment was justified. *See, e.g.*, *Chateau Chamberay*, 90 Cal. App. 4th at 348–49; *Fraley*, 81 Cal. App. 4th at 1293. Therefore, Defendant is entitled to summary judgment unless Plaintiff raises a triable issue that permits conflicting inferences as to the reasonableness of Defendant's investigation. *See Chateau Chamberay*, 90 Cal. App. 4th at 350.

### 2. Unreasonable Delay

It is well established that "[t]here can be no 'unreasonable delay' until the insurer receives adequate information to process the claim and reach an agreement with the insured." *Globe Indem. Co. v. Superior Court*, 6 Cal. App. 4th 725, 731 (1992); *accord Maynard*, 499 F. Supp. 2d at 1160 ("delay while the insurer seeks information and investigates the insured's claim" does not give rise to liability for bad faith). An insurer is not obligated to pay a claim "until it [can] find out on its own, to a measure of certainty," that the benefits are owed. *Blake v. Aetna Life Ins. Co.*, 99 Cal. App. 3d 901, 924 (1979). Indeed, it is recognized that it would be "improvident" for an insurer to pay a claim before it receives information verifying the claim's value. *Id.* at 921.

Here, the Court is unpersuaded by Plaintiff's argument that Defendant demonstrated "a pattern of delays" in its evaluation of Plaintiff's claim. Doc. No. 14 at 14. Defendant evaluated Plaintiff's UIM claim in May 2019. DSS at No. 16; PRS at No. 17. Plaintiff concedes in his opposition that his claim was not "perfected" until October 16, 2018, when Plaintiff e-mailed Defendant a copy of the settlement check he had received from the other driver's liability insurer for $15,000. Doc. No. 14 at 9; DSS at No. 15; PRS at No. 15; Doc. No. 13-6 at 2. As noted by Defendant, it had "no obligation to open UIM coverage or investigate [Plaintiff's] claim" until proof of payment was submitted regarding the settlement on Plaintiff's underlying third-party

claim. Doc. No. 15 at 8. Therefore, the Court finds Plaintiff's argument that Defendant "took over a year to even being [sic] to evaluation [sic] Plaintiff's claim" disingenuous. *See* Doc. No. 14 at 14. The undisputed facts demonstrate Defendant did not unreasonably delay investigating, evaluating, and settling Plaintiff's claim. Once Defendant evaluated Plaintiff's claim in May 2019, Defendant worked steadfastly with Plaintiff to schedule Plaintiff's deposition, retain Dr. Dodge for another IME, conduct discovery, and set a date for arbitration. DSS at Nos. 17, 20–21, 27; PRS at Nos. 17, 20, 22, 26, 41. Moreover, even if Defendant should have completed its evaluation of Plaintiff's UIM claim more efficiently, at most Defendant's delay may amount to negligence. "[U]nder California law, negligence is not bad faith." *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 995 (9th Cir. 2001). No jury could look at the undisputed facts and evidence and reasonably conclude Defendant engaged in a bad faith pattern of delay.

Therefore, the Court concludes the undisputed facts relating to Defendant's investigation of Plaintiff's claim establishes that Defendant did not unreasonably delay the investigation or resolution of Plaintiff's claim. Accordingly, the Court concludes Defendant is entitled to summary judgment and **GRANTS** Defendant's motion as to Plaintiff's breach of implied covenant of good faith and fair dealing claim. *See Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 723–24 (2007).

**C.   Punitive Damages**

Defendant argues that regardless of how this Court rules on Plaintiff's breach of contract and bad faith claims, partial summary judgment on Plaintiff's request for punitive damages claim is appropriate. Doc. No. 13-1 at 26–28.

Before a plaintiff may recover under a claim for punitive damages, he or she must first establish by clear and convincing evidence that the defendant acted with malice, oppression or fraud. *Adams v. Allstate Ins. Co.*, 187 F. Supp. 2d 1207, 1218 (C.D. Cal. 2002) (citing *Lunsford v. American Guarantee—Liability Ins. Co.*, 18 F.3d 653, 656 (9th Cir. 1994)). This higher clear and convincing standard applies at every stage of the litigation process. In addition, "a plaintiff unable to defeat a motion for summary

judgment on a bad faith claim is also unable to defeat the related claim for punitive damages." *Sekera v. Allstate Ins. Co.*, No. ED-CV-141162J-GBD-TBX, 2017 WL 6550425, at *4 (C.D. Cal. Sept. 19, 2017), aff'd, 763 F. App'x 629 (9th Cir. 2019).

Because this Court finds Defendant is entitled to summary judgment on Plaintiff's bad faith claim, and because Plaintiff has not provided clear and convincing evidence that Defendant acted with oppression, fraud, or malice, Defendant is also entitled to summary judgment in its favor on Plaintiff's punitive damages claim. Accordingly, the Court also **GRANTS** Defendant's motion as to Plaintiff's punitive damages claim.

## V. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's motion for summary judgment. As such, the Court **DIRECTS** the Clerk of Court to enter judgment accordingly and close this case.

**IT IS SO ORDERED**.

Dated: August 15, 2023

HON. MICHAEL M. ANELLO
United States District Judge